# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
07/13/2018

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| SANDRIDGE ENERGY, INC., *et al.*,[1] | § | Case No. 16-32488 (DRJ) |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | § | |

**ORDER GRANTING REORGANIZED DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE PROPOSED *PECK* SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019 AND GRANTING RELATED RELIEF**
(Docket No. 1390)

Upon the motion (the "Motion")[2] of the above-captioned Reorganized Debtors for entry of an order (this "Order") approving the *Peck* Settlement Agreement, attached hereto as **Exhibit 1**, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; it is HEREBY ORDERED THAT:

---

[1]    The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: SandRidge Energy, Inc. (4793); 4th Street Properties, LLC (N/A); Black Bayou Exploration, L.L.C. (0561); Braniff Restaurant Holdings, LLC (2453); CEBA Gathering, LLC (6478); CEBA Midstream GP, LLC (0511); CEBA Midstream, LP (7252); Cholla Pipeline, L.P. (5092); Cornhusker Energy, L.L.C. (4609); FAE Holdings 389322R, LLC (N/A); Integra Energy, L.L.C. (7527); Lariat Services, Inc. (0702); MidContinent Resources, LLC (6928); Mistmada Oil Company, Inc. (3032); Piñon Gathering Company, LLC (5943); Sabino Exploration, LLC (1929); Sagebrush Pipeline, LLC (0515); SandRidge CO2, LLC (7903); SandRidge Exploration and Production, LLC (6535); SandRidge Holdings, Inc. (8401); SandRidge Midstream, Inc. (1148); SandRidge Operating Company (1245); SandRidge Realty, LLC (6079); Sierra Madera CO2 Pipeline, LLC (1558); and WTO Gas Gathering Company, LLC (N/A).  The location of the Reorganized Debtors' service address is:  123 Robert S. Kerr Avenue, Oklahoma City, Oklahoma 73102.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1.      The Motion is granted as set forth herein.

2.      The *Peck* Settlement Agreement is hereby approved pursuant to Bankruptcy Rule 9019.

3.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

4.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Signed:  July 13, 2018.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**Exhibit 1**

**Proposed *Peck* Settlement Agreement**

### *PECK* SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Peck* Settlement Agreement and Mutual Release (this "*Peck* Settlement Agreement") is made and entered into as of the 12th day of December, 2017 (the "Execution Date") by and among:

(i) SandRidge Energy, Inc. ("SandRidge") and SandRidge Operating Company ("SandRidge Operating," together with SandRidge, the "Debtors," and after the effective date of the plan of reorganization, the "Reorganized Debtors"); and

(ii) Mickey Peck, Brian Adkins, Brad Burkhalter, David Kuhlman, Jared Lamb, Edward Leal, and Christopher Smart (collectively, the "*Peck* Claimants").

The term "Parties," as used in this *Peck* Settlement Agreement, means the Reorganized Debtors and the *Peck* Claimants. This *Peck* Settlement Agreement is binding upon and shall inure to the benefit of all Parties hereto, their agents, representatives, insurers, attorneys, accountants, advisors, partners, heirs, assigns, and successors and predecessors in interest.

### RECITALS

#### A.     The *Peck* Action

WHEREAS, on September 2, 2015, Mickey Peck, on behalf of himself and all others similarly situated (the "Plaintiffs"), filed a collective action complaint against SandRidge in the United States District Court for the Western District of Oklahoma (the "District Court"), Case No. 15-cv-00950 (the "*Peck* Action"), alleging certain violations of the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). On October 12, 2015, SandRidge filed the *Answer to Plaintiff's Complaint* [District Court Docket No. 18]. On November 18, 2015, the Plaintiffs filed the *First Amended Collective Action Complaint*, adding SandRidge Operating as a defendant.

#### B.     The Reorganized Debtors' Chapter 11 Proceedings

WHEREAS, on May 16, 2016 (the "Petition Date"), each of the Reorganized Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

WHEREAS, on June 30, 2016, the Bankruptcy Court entered the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates* [Docket No. 431] (the "Bar Date Order"), setting the deadline to file all proofs of claim, except those being asserted by governmental units and those arising from the rejection of executory contracts and unexpired leases, on July 22, 2016, at 5:00 p.m., prevailing Central Time (the "Claims Bar Date").

WHEREAS, pursuant to the Bar Date Order, notice of the Claims Bar Date was served on all creditors and other known holders of claims against the Debtors as of June 30, 2016 via email, facsimile, or first class mail. In total, the *Notice of Deadlines for the Filing of Proofs of Claim, Including Requests for Payment Pursuant to Section 503(b)(9) of the Bankruptcy Code* [Bankruptcy Docket No. 495] (the "<u>Bar Date Notice</u>") and Official Form 410 Proof of Claims with individualized contact information was served directly on approximately 61,000 parties. Notice of the Claims Bar Date was further published in the national edition of *USA Today*, the *Oklahoman*, and *Platts Gas Daily* on July 7, 2016.

WHEREAS, the *Peck* Claimants filed a number of proofs of claim relating to the *Peck* Action (the "<u>*Peck* Proofs of Claim</u>"):

(1)   Court claim no. 777-1 (Prime Clerk number 1021), filed by Brian Adkins against SandRidge, for $12,194.99;

(2)   Court claim no. 778-1 (Prime Clerk number 1108), filed by Brad Burkhalter against SandRidge, for $20,140.63;

(3)   Court claim no. 779-1 (Prime Clerk number 1016), filed by David Kuhlman against SandRidge, for $998.18;

(4)   Court claim no. 780-1 (Prime Clerk number 1111), filed by Jared Lamb against SandRidge, for $116,453.47;

(5)   Court claim no. 782-1 (Prime Clerk number 1029), filed by Edward Leal against SandRidge, for $177,308.52;

(6)   Court claim no. 783-1 (Prime Clerk number 1113), filed by Mickey Peck against SandRidge, for $202,392.06;

(7)   Court claim no. 784-1 (Prime Clerk number 1028), filed by Christopher Smart against SandRidge, for $97,086.58;

(8)   Court claim no. 786-1 (Prime Clerk number 1036), filed by Brian Adkins against SandRidge Operating, for $12,194.99;

(9)   Court claim no. 787-1 (Prime Clerk number 1008), filed by Brad Burkhalter against SandRidge Operating, for $20,140.63;

(10)  Court claim no. 788-1 (Prime Clerk number 1062), filed by David Kuhlman against SandRidge Operating, for $998.18;

(11)  Court claim no. 789-1 (Prime Clerk number 1063), filed by Jared Lamb against SandRidge Operating, for $116,453.47;

(12)  Court claim no. 790-1 (Prime Clerk number 1115), filed by Edward Leal against SandRidge Operating, for $177,308.52;

(13) Court claim no. 791-1 (Prime Clerk number 1066), filed by Mickey Peck against SandRidge Operating, for $202,392.06;

(14) Court claim no. 792-1 (Prime Clerk number 1116), filed by Christopher Smart against SandRidge Operating, for $97,086.58;

WHEREAS, on September 20, 2016, the Court entered the *Amended Order Confirming the Joint Chapter 11 Plan of Reorganization of SandRidge Energy, Inc. and its Debtor Affiliates* [Bankruptcy Docket No. 901] (the "Confirmation Order"), confirming the *Joint Chapter 11 Plan of Reorganization of SandRidge Energy, Inc. and Its Debtor Affiliates* [Bankruptcy Docket No. 901-1] (the "Plan," as may be amended). The Plan was made effective on October 4, 2016. *See Notice of (I) Entry of Order Confirming the Joint Chapter 11 Plan of Reorganization of SandRidge Energy, Inc. and Its Debtor Affiliates and (II) Occurrence of Effective Date* [Bankruptcy Docket No. 929].

WHEREAS, from the Petition Date through the Effective Date, the *Peck* Action was stayed as against the Reorganized Debtors by operation of the automatic stay arising under section 362 of the Bankruptcy Code.

WHEREAS, since the Effective Date, the *Peck* Action has been stayed as against the Reorganized Debtors by operation of the injunctions contained in the Plan and the Confirmation Order, and any other post-confirmation injunctions applicable under the Bankruptcy Code.

WHEREAS, pursuant to Article VII of the Plan, the Reorganized Debtors are authorized to settle, compromise, or otherwise resolve all Claims, as that term is defined in the Plan, including the *Peck* Proofs of Claim.

C. *Peck* **Settlement Agreement**

WHEREAS, the Parties have entered into discussions regarding certain terms and conditions for the full and final settlement of the claims, controversies, and disputes arising from and relating to the *Peck* Proofs of Claim and the *Peck* Action.

WHEREAS, without admission of liability by any Party, the Parties desire to settle all claims, controversies, and disputes between them arising from claims, controversies, and disputes concerning the *Peck* Proofs of Claim and the *Peck* Action.

<u>**AGREEMENT**</u>

NOW, THEREFORE in consideration of the representations, acknowledgements promises, recitals, mutual covenants, terms and conditions contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>**Conditions to Effectiveness.**</u>

(a) Notwithstanding anything to the contrary herein, the Parties acknowledge and agree that the effectiveness of this *Peck* Settlement Agreement is expressly conditioned upon: (1)

3

the entry of a final, non-appealable order by the Bankruptcy Court approving the *Peck* Settlement Agreement pursuant to Rule 9019 (the "Approval Order"); and (2) the entry of a final, non-appealable order by the District Court dismissing, with prejudice, the *Peck* Action (the "Dismissal Order, and such date the Approval Order and Dismissal Order are made final and non-appealable, the "Settlement Effective Date").

(b)     The Parties' obligations with respect to this *Peck* Settlement Agreement, except for the Reorganized Debtors' obligation to seek the Bankruptcy Court's approval of the *Peck* Settlement Agreement and Nichols Kaster, PLLP's ("*Peck* Counsel") obligation to seek the District Court's dismissal of the *Peck* Action with prejudice, are subject to the occurrence of the Settlement Effective Date.  Upon execution of this *Peck* Settlement Agreement by the Parties, the Reorganized Debtors' counsel shall prepare and file all papers necessary to obtain such approval pursuant to Bankruptcy Rule 9019, including a motion for the same (the "Approval Motion").  Upon the entry of a final, non-appealable order by the Bankruptcy Court approving the *Peck* Settlement Agreement pursuant to Rule 9019, *Peck* Counsel shall prepare and file all papers necessary to obtain the dismissal with prejudice of the *Peck* Action.

**2.     Agreed Claims.**

(a)     Mickey Peck agrees: (a) to the reduction of Court claim number 783-1 on the Bankruptcy Court's official claims register (the "Mickey Peck Claim"), and modification of the amount of the Mickey Peck Claim, to $187,347.95 and (b) that the Mickey Peck Claim is a General Unsecured Claim in Class 5(a) as defined in the Plan (the Mickey Peck Claim, as modified as set forth herein, the "Agreed Mickey Peck Claim").  The Agreed Mickey Peck Claim shall be satisfied in accordance with the Plan.  By this Stipulation, the Mickey Peck Claim is hereby deemed reduced and modified as set forth herein, and any other claims or proofs of claim of Mickey Peck against the Debtors arising before the Effective Date, if any, are by this *Peck* Settlement Agreement deemed disallowed and expunged.  These agreed upon terms shall be reflected as such on the Bankruptcy Court's official claims register.

(b)     Brian Adkins agrees: (a) to the reduction of Court claim number 777-1 on the Bankruptcy Court's official claims register (the "Adkins Claim"), and modification of the amount of the Adkins Claim, to $11,287.21; and (b) that the Adkins Claim is a General Unsecured Claim in Class 5(a) as defined in the Plan (the Adkins Claim, as modified as set forth herein, the "Agreed Adkins Claim").  The Agreed Adkins Claim shall be satisfied in accordance with the Plan.  By this Stipulation, the Adkins Claim is hereby deemed reduced and modified as set forth herein, and any other claims or proofs of claim of Brian Adkin against the Debtors arising before the Effective Date, if any, are by this *Peck* Settlement Agreement deemed disallowed and expunged.  These agreed upon terms shall be reflected as such on the Bankruptcy Court's official claims register.

(c)     Brad Burkhalter agrees: (a) to the reduction of Court claim number 778-1 on the Bankruptcy Court's official claims register (the "Burkhalter Claim"), and modification of the amount of the Burkhalter Claim, to $18,643.93; and (b) that the Burkhalter Claim is a General Unsecured Claim in Class 5(a) as defined in the Plan (the Burkhalter Claim, as modified as set forth herein, the "Agreed Burkhalter Claim").  The Agreed Burkhalter Claim shall be satisfied in

accordance with the Plan. By this Stipulation, the Burkhalter Claim is hereby deemed reduced and modified as set forth herein, and any other claims or proofs of claim of Brad Burkhalter against the Debtors arising before the Effective Date, if any, are by this *Peck* Settlement Agreement deemed disallowed and expunged. These agreed upon terms shall be reflected as such on the Bankruptcy Court's official claims register.

(d)     David Kuhlman agrees: (a) to the reduction of Court claim number 779-1 on the Bankruptcy Court's official claims register (the "Kuhlman Claim"), and modification of the amount of the Kuhlman Claim, to $924.35; and (b) that the Kuhlman Claim is a General Unsecured Claim in Class 5(a) as defined in the Plan (the Kuhlman Claim, as modified as set forth herein, the "Agreed Kuhlman Claim"). The Agreed Kuhlman Claim shall be satisfied in accordance with the Plan. By this Stipulation, the Kuhlman Claim is hereby deemed reduced and modified as set forth herein, and any other claims or proofs of claim of David Kuhlman against the Debtors arising before the Effective Date, if any, are by this *Peck* Settlement Agreement deemed disallowed and expunged. These agreed upon terms shall be reflected as such on the Bankruptcy Court's official claims register.

(e)     Jared Lamb agrees: (a) to the reduction of Court claim number 780-1 on the Bankruptcy Court's official claims register (the "Lamb Claim"), and modification of the amount of the Lamb Claim, to $107,797.48; and (b) that the Lamb Claim is a General Unsecured Claim in Class 5(a) as defined in the Plan (the Lamb Claim, as modified as set forth herein, the "Agreed Lamb Claim"). The Agreed Lamb Claim shall be satisfied in accordance with the Plan. By this Stipulation, the Lamb Claim is hereby deemed reduced and modified as set forth herein, and any other claims or proofs of claim of Jared Lamb against the Debtors arising before the Effective Date, if any, are by this *Peck* Settlement Agreement deemed disallowed and expunged. These agreed upon terms shall be reflected as such on the Bankruptcy Court's official claims register.

(f)     Edward Leal agrees: (a) to the reduction of Court claim numbers 782-1 on the Bankruptcy Court's official claims register (the "Leal Claim"), and modification of the amount of the Leal Claim, to $164,128.82; and (b) that the Leal Claim is a General Unsecured Claim in Class 5(a) as defined in the Plan (the Leal Claim, as modified as set forth herein, the "Agreed Leal Claim"). The Agreed Leal Claim shall be satisfied in accordance with the Plan. By this Stipulation, the Leal Claim is hereby deemed reduced and modified as set forth herein, and any other claims or proofs of claim of Edward Leal against the Debtors arising before the Effective Date, if any, are by this *Peck* Settlement Agreement deemed disallowed and expunged. These agreed upon terms shall be reflected as such on the Bankruptcy Court's official claims register.

(g)     Christopher Smart agrees: (a) to the reduction of Court claim numbers 784-1 on the Bankruptcy Court's official claims register (the "Smart Claim"), and modification of the amount of the Smart Claim, to $89,870.26; and (b) that the Smart Claim is a General Unsecured Claim in Class 5(a) as defined in the Plan (the Smart Claim, as modified as set forth herein, the "Agreed Smart Claim," and together with the Agreed Mickey Peck Claim, the Agreed Adkins Claim, the Agreed Burkhalter Claim, the Agreed Kuhlman Claim, the Agreed Lamb Claim, and the Agreed Leal Claim, the "Agreed *Peck* Claims"). The Agreed Smart Claim shall be satisfied in accordance with the Plan. By this Stipulation, the Smart Claim is hereby deemed reduced and modified as set forth herein, and any other claims or proofs of claim of Christopher Smart

against the Debtors arising before the Effective Date, if any, are by this *Peck* Settlement Agreement deemed disallowed and expunged. These agreed upon terms shall be reflected as such on the Bankruptcy Court's official claims register.

**3.     Disallowed Claims.**  The *Peck* Claimants agree that Court claim numbers 786-1, 787-1, 788-1, 789-1, 790-1, 791-1, and 792-1, and any other claims or proofs of claim filed by the *Peck* Claimants against the Debtors arising before the Effective Date, except for the Agreed *Peck* Claims set forth in Section 2, are, by this *Peck* Settlement Agreement, deemed disallowed and expunged. These agreed upon terms shall be reflected as such on the Bankruptcy Court's official claims register.

**4.     Distribution of Agreed Claims.**

(a)     Distributions respecting the Agreed *Peck* Claims shall be made to Alexander M. Baggio, care of Nichols Kaster, PLLP, at the address below, or at such other address as designated in writing by *Peck* Counsel, through notice to the Reorganized Debtors to the addresses set forth in Section 5.

Alexander M. Baggio
c / o Nichols Kaster, PLLP
4600 IDS Center
80 S. 8th St.
Minneapolis, MN 55402

(b)     *Peck* Counsel shall distribute the proceeds from the Agreed *Peck* Claims according to the respective interests of the individuals listed in Section 2, less legal costs and fees for *Peck* Counsel, and the costs of liquidation, processing, mailing, and accounting for such distributions, which costs the *Peck* Counsel shall pay from the proceeds of the Agreed *Peck* Claims.

**5.     Dismissal of *Peck* Action With Prejudice.**  Upon entry of a final, non-appealable order by the Bankruptcy Court approving the *Peck* Settlement Agreement pursuant to Rule 9019, *Peck* Counsel shall voluntarily dismiss the *Peck* Action with prejudice. *Peck* Counsel shall prepare and file all papers necessary with the District Court to do so. A file-stamped copy of the dismissal with prejudice shall be sent to the address below:

Matt Thompson
SandRidge Energy, Inc.
123 Robert S. Kerr Ave.
Oklahoma City, OK 73102

Mark McKane, P.C.
Kirkland & Ellis LLP
555 California Street, Fl. 29
San Francisco, CA 94104

6. **Mutual Release; Covenant Not to Sue.**

(a)     Upon the Effective Date of this *Peck* Settlement Agreement, in consideration of the covenants undertaken herein, the Parties, on behalf of themselves and (i) each of their respective current and former, direct and indirect, parent companies, subsidiaries, and affiliates; (ii) the respective assigns, predecessors, successors, and related entities of the entities in (i); (iii) all current and former employees, agents, directors, officers, managers, members, stockholders, partners, limited partners, equity holders, professionals, staff, principals, owners, and other representatives of the individuals and entities in clauses (i) through (iii) (collectively, "Release Parties"), for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, and having been represented by counsel and having been fully and adequately informed as to the facts, circumstances and consequences of this *Peck* Settlement Agreement, hereby irrevocably and unconditionally release, acquit, and forever discharge one another, and all of their respective Release Parties, attorneys, and insurers (all of which and whom are collectively referred to as "Releasees"), with respect to and from, any and all claims, demands, charges, additional costs, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, arbitration, tax assessments, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, wages, compensation, controversies, indemnities, variances, trespasses, damages, compensation, fines, penalties, losses, orders and liabilities, of whatever kind or nature in law, equity or otherwise, whether now known or unknown, compulsory or permissive, sounding in tort, contract, statutory or regulatory violation or otherwise, suspected or unsuspected, discovered or undiscovered, foreseen or unseen, vested or contingent, accrued or unaccrued, liquidated or unliquidated, asserted or unasserted, matured or unmatured, direct or indirect, derivative or subrogated, individual, class, representative, or other capacity, which the Release Parties now own or hold, or has at any time heretofore owned or held, or may in the future hold against said Releasees, or any of them, arising out of or in any way relating to the *Peck* Action and the *Peck* Proofs of Claim.

(b)     Each of the Parties, on behalf of itself and its respective Release Parties, covenants and agrees not to pursue or prosecute any suit, claim, action, or proceeding seeking recovery against or from any one or more of the Releasees arising out of or relating to any one or more of the claims released hereunder.

(c)     The *Peck* Claimants knowingly, voluntarily, and freely agree and acknowledge that, as of the Effective Date of this *Peck* Settlement Agreement, they have been compensated for all hours worked during their employment with and/or assignment with the Releasees.

7. **Representations and Warranties.**

(a)     Each of the Parties acknowledges, agrees, represents and warrants that:

(i)     It has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any claim or cause of action released pursuant to Section 6 above;

7

(ii)     There are no liens or claims of lien, or assignments in law or equity or otherwise, of or against any claim or cause of action released pursuant to Section 6 above;

(iii)     It has duly executed and delivered this *Peck* Settlement Agreement and is fully authorized to enter into and perform this *Peck* Settlement Agreement and every term hereof;

(iv)     It has been represented by legal counsel in the negotiation and joint preparation of this *Peck* Settlement Agreement, has received advice from legal counsel in connection with this *Peck* Settlement Agreement and is fully aware of this *Peck* Settlement Agreement's provisions and legal effect; and

(v)     It enters into this *Peck* Settlement Agreement freely, without coercion, and based on its own judgment and not in reliance upon any representations or promises made by the other Parties, apart from those set forth in this *Peck* Settlement Agreement.

(b)     Each of the Parties acknowledges the materiality of the foregoing representations and warranties.

**8.     Waiver of California Civil Code Section 1542 and Analogous Statutes.**  This *Peck* Settlement Agreement is the result of a compromise and shall not be deemed an admission of the truth or correctness of the claims or contentions of any Party to this *Peck* Settlement Agreement against any other Party.  It is understood by the Parties that there is a risk that subsequent to the execution of this *Peck* Settlement Agreement the claims of any Party with respect to the subject matter hereof may be discovered to be greater or less than any Party now expects or anticipates. Each Party assumes this risk and the releases contained herein shall apply to all unknown, undiscovered, or unanticipated results, as well as those known, discovered and anticipated.  The Parties expressly waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code and analogous statutes, and any law of any state or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar, comparable or equivalent to Section 1542 of the California Civil Code with respect to all claims and other rights released in Section 6 of this *Peck* Settlement Agreement, and do so understanding and acknowledging the significance and consequence of such specific waiver of Section 1542.  Section 1542 of the California Civil Code states as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Each Party has read and understands the provisions of California Civil Code Section 1542 and acknowledges and agrees that, although it may hereafter discover facts other than or different from those that it knows or believes to be true with respect to the claims released pursuant to the provisions of this *Peck* Settlement Agreement, it hereby expressly waives the benefits of California Civil Code Section 1542 and analogous statutes, and any law of any state

or territory of the United States, or principle of common law, or the law of any foreign jurisdiction, that is similar, comparable or equivalent to Section 1542 of the California Civil Code, and fully, finally and forever settles and releases any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claims related to those claims and other rights released in Section 6 of this *Peck* Settlement Agreement, without regard to the subsequent discovery or existence of such different or additional facts.

9.      **No Admission or Acknowledgement.**  Each of the Parties understands, acknowledges, and agrees that this *Peck* Settlement Agreement constitutes a compromise and settlement of disputed claims arising from or relating to the *Peck* Action, and the *Peck* Proofs of Claim, and that this *Peck* Settlement Agreement shall not constitute the admission of any fact or liability by any of them regarding any claim, including but not limited to, the claims released hereunder, and neither the terms hereof, nor the fact of this *Peck* Settlement Agreement itself, shall be evidence of any kind in any proceeding, other than a proceeding to enforce the terms of this *Peck* Settlement Agreement or any instrument executed in connection herewith or any claim for damages or other relief for breach of any representation or warranty contained herein or in any instrument executed in connection herewith.  No action taken by the Parties, or any of them, either previously or in connection with this *Peck* Settlement Agreement, shall be deemed to be or construed to be (i) an admission of the truth or falsity of any of the claims made and/or raised in connection with such disputed claims or of any question of law or fact; or (ii) an acknowledgment or admission by any Party of any fault, wrongdoing or liability whatsoever.

10.     **Entire Agreement; Amendment; Waiver.**  This *Peck* Settlement Agreement constitutes the entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, representations, understandings, negotiations, and discussions, whether oral or written, of the Parties, and there are no warranties, representations or agreements between the Parties in connection with the subject matter hereof, except as set forth or referred to herein.  No supplement, modification, waiver, amendment, or termination of this *Peck* Settlement Agreement, or any provision hereof, shall be binding unless executed in writing by the Parties to be bound thereby.  No waiver of any of the provisions of this *Peck* Settlement Agreement shall constitute a waiver of any other provisions, whether or not similar, nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

11.     **Agreement Costs and Expenses.**  The Parties each agree to bear and pay their own costs and expenses, including without limitation, attorneys' fees and experts' fees, incurred in connection with the negotiation and execution of this *Peck* Settlement Agreement.

12.     **Payment of Applicable Taxes.**  Each *Peck* Claimant is and shall be responsible for all federal, state, and local taxes that may be owed by virtue of receipt of any portion of the monetary payment provided under this *Peck* Settlement Agreement.  Each *Peck* Claimant agrees to indemnify and hold the Releasees harmless from any and all liability, including, without limitation, all penalties, interest and other costs that may be imposed by the Internal Revenue Service or other governmental agencies regarding any tax obligations that may arise from the monetary consideration made to each *Peck* Claimant under this *Peck* Settlement Agreement.

13. **Oklahoma Law and Construction of Agreement.** This *Peck* Settlement Agreement shall be governed by and construed under and in accordance with the laws of the State of Oklahoma, without regard to the conflict of law provisions thereof that would result in the application of the law of another jurisdiction. The language of all parts of this *Peck* Settlement Agreement shall, in all cases, be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties on the ground that such Party drafted or caused to be drafted this *Peck* Settlement Agreement or any part thereof; it being recognized that this *Peck* Settlement Agreement is the result of arm's length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this *Peck* Settlement Agreement.

14. **Bankruptcy Court Jurisdiction.** The Bankruptcy Court retains the exclusive jurisdiction with respect to all matters arising from or related to the approval, implementation, interpretation, and enforcement of this *Peck* Settlement Agreement.

15. **Non-Disparagement and Non-Incitement of Claims**. The *Peck* Claimants agree that they will not make or cause to be made any statements concerning the *Peck* Settlement Agreement or settlement amounts therein. In the event a *Peck* Claimant makes such a communication to anyone, including, but not limited to, the media, public interest groups, and publishing companies, it will be considered a material breach of the terms of this *Peck* Settlement Agreement.

16. **Counterpart Execution and Use of Photocopies.** This *Peck* Settlement Agreement may be executed in counterparts by signature of each of the Parties hereto, or their authorized representatives, on multiple copies of this *Peck* Settlement Agreement, including copies transmitted by facsimile machine or electronically, and upon being so executed by all Parties hereto, shall be effective as if all signatures appeared on the original of this *Peck* Settlement Agreement.

17. **Additional Documents and Acts.** Each of the Parties agrees to execute or cause its counsel to execute any additional documents and take any further action which may reasonably be required to consummate this *Peck* Settlement Agreement, or otherwise fulfill the obligations of the Parties hereunder, including, but not limited to, obtaining the requisite approval from either the District Court or the Bankruptcy Court of this *Peck* Settlement Agreement as may determined to be necessary. The Parties shall bear their own costs and attorneys' fees incurred in connection with any such additional action.

18. **Authority to Enter Agreement.** The persons executing this *Peck* Settlement Agreement hereby represent and warrant that they have the authority to bind the entity upon whose behalf the *Peck* Settlement Agreement is executed.

19. **Binding Effect.** This *Peck* Settlement Agreement shall be binding upon and shall inure to the benefit of each of the Parties hereto and their respective successors and assigns. The Parties are authorized to take all actions necessary to effectuate the terms and provisions of this *Peck* Settlement Agreement without notice by the Reorganized Debtors to any other party or need to file with, or seek approval of this *Peck* Settlement Agreement from, the Bankruptcy Court.

20. **Recitals, Acknowledgement & Consent to Terms.** The Parties acknowledge that the recitals contained hereinabove are true and correct to the best of their knowledge, and are made a part of this *Peck* Settlement Agreement and incorporated by reference. The Parties acknowledge that they have read this *Peck* Settlement Agreement, understand the promises, recitals, mutual covenants, terms and conditions contained herein, and voluntarily consent to the terms hereof.

21. **Full and Final Settlement.** The Parties acknowledge and agree that this *Peck* Settlement Agreement represents the full and final settlement of all claims and causes of action arising from or relating to the Class Motion, the *Peck* Action, and the *Peck* Proofs of Claim, with respect to each of the Parties hereto in accordance with the terms hereof.

22. **Headings.** Section headings in this *Peck* Settlement Agreement are included herein for convenience of reference only and shall not constitute a part of this *Peck* Settlement Agreement for any other purpose.

[*Remainder of Page Intentionally Left Blank*]

IN WITNESS WHEREOF, the Parties have executed this *Peck* Settlement Agreement as of the Execution Date.

By: _Mickey Peck_
Name: Mickey Peck

**SandRidge Energy, Inc.**
**SandRidge Exploration and Production, LLC**

By: _____
Name: Philip Warman
Title: General Counsel

By: _____
Name: Brian Adkins

**Nichols Kaster, PLLP**

By: _____
Name: Alexander M. Baggio
Title: Authorized Signatory

By: _____
Name: Brad Burkhalter

By: _____
Name: David Kuhlman

By: _____
Name: Jared Lamb

By: _____
Name: Edward Leal

By: _____
Name: Christopher Smart

12

IN WITNESS WHEREOF, the Parties have executed this *Peck S*ettlement Agreement as of the Execution Date.

By: _____
Name: Mickey Peck


By: _____
Name: Brian Adkins




By: _____
Name: Brad Burkhalter




By: _____
Name: David Kuhlman




By: _____
Name: Jared Lamb




By: _____
Name: Edward Leal




By: _____
Name: Christopher Smart

**SandRidge Energy, Inc.**
**SandRidge Exploration and Production, LLC**

By: _____
Name: Philip Warman
Title: General Counsel


**Nichols Kaster, PLLP**

By: _____
Name: Alexander M. Baggio
Title: Authorized Signatory

IN WITNESS WHEREOF, the Parties have executed this *Peck S*ettlement Agreement as of the Execution Date.

By: _____
Name:  Mickey Peck

**SandRidge Energy, Inc.**
**SandRidge Exploration and Production, LLC**

By: _____
Name:  Philip Warman
Title:  General Counsel

By: _____
Name: Brian Adkins

**Nichols Kaster, PLLP**

By: _____
Name:  Alexander M. Baggio
Title:  Authorized Signatory

By: _____
Name:  Brad Burkhalter

By: _____
Name:  David Kuhlman

By: _____
Name:  Jared Lamb

By: _____
Name:  Edward Leal

By: _____
Name:  Christopher Smart

IN WITNESS WHEREOF, the Parties have executed this *Peck S*ettlement Agreement as of the Execution Date.

By: _____
Name: Mickey Peck

**SandRidge Energy, Inc.**
**SandRidge Exploration and Production, LLC**

By: _____
Name: Philip Warman
Title: General Counsel

By: _____
Name: Brian Adkins

**Nichols Kaster, PLLP**

By: _____
Name: Alexander M. Baggio
Title: Authorized Signatory

By: _____
Name: Brad Burkhalter

By: _~David J. Kuhl~_____
Name: David Kuhlman

By: _____
Name: Jared Lamb

By: _____
Name: Edward Leal

By: _____
Name: Christopher Smart

IN WITNESS WHEREOF, the Parties have executed this *Peck* Settlement Agreement as of the Execution Date.

By: _____
Name:  Mickey Peck

**SandRidge Energy, Inc.**
**SandRidge Exploration and Production, LLC**

By: _____
Name:  Philip Warman
Title:  General Counsel

By: _____
Name:  Brian Adkins

**Nichols Kaster, PLLP**

By: _____
Name:  Alexander M. Baggio
Title:  Authorized Signatory

By: _____
Name:  Brad Burkhalter

By: _____
Name:  David Kuhlman

By: _____
Name:  Jared Lamb

By: _____
Name:  Edward Leal

By: _____
Name:  Christopher Smart

IN WITNESS WHEREOF, the Parties have executed this *Peck Settlement* Agreement as of the Execution Date.

By: _____
Name: Mickey Peck

**SandRidge Energy, Inc.**
**SandRidge Exploration and Production, LLC**

By: _____
Name: Philip Warman
Title: General Counsel

By: _____
Name: Brian Adkins

**Nichols Kaster, PLLP**

By: _____
Name: Alexander M. Baggio
Title: Authorized Signatory

By: _____
Name: Brad Burkhalter

By: _____
Name: David Kuhlman

By: _____
Name: Jared Lamb

By: _____
Name: Edward Leal

By: _____
Name: Christopher Smart

       IN WITNESS WHEREOF, the Parties have executed this *Peck S*ettlement Agreement as of the Execution Date.


By: _____
Name:  Mickey Peck

                                        **SandRidge Energy, Inc.**
                                        **SandRidge Exploration and Production, LLC**

                                        By: _____
                                        Name:  Philip Warman
                                        Title:  General Counsel

By: _____
Name: Brian Adkins

                                        **Nichols Kaster, PLLP**

                                        By: _____
                                        Name:  Alexander M. Baggio
By: _____        Title:  Authorized Signatory
Name:  Brad Burkhalter


By: _____
Name:  David Kuhlman


By: _____
Name:  Jared Lamb


By: _____
Name:  Edward Leal


By: _____
Name:  Christopher Smart

IN WITNESS WHEREOF, the Parties have executed this *Peck* Settlement Agreement as of the Execution Date.

By: _____
Name:  Mickey Peck

**SandRidge Energy, Inc.**
**SandRidge Exploration and Production, LLC**

By: _____
Name:  Philip Warman
Title:  General Counsel

By: _____
Name:  Brian Adkins

**Nichols Kaster, PLLP**

By: _____
Name:  Alexander M. Baggio
Title:  Authorized Signatory

By: _____
Name:  Brad Burkhalter

By: _____
Name:  David Kuhlman

By: _____
Name:  Jared Lamb

By: _____
Name:  Edward Leal

By: _____
Name:  Christopher Smart

IN WITNESS WHEREOF, the Parties have executed this *Peck S*ettlement Agreement as of the Execution Date.

By: _____
Name:  Mickey Peck

**SandRidge Energy, Inc.**
**SandRidge Exploration and Production, LLC**

By: _____
Name:  Philip Warman
Title:  General Counsel

By: _____
Name: Brian Adkins

**Nichols Kaster, PLLP**

By: _____
Name:  Alexander M. Baggio
Title:  Authorized Signatory

By: _____
Name:  Brad Burkhalter

By: _____
Name:  David Kuhlman

By: _____
Name:  Jared Lamb

By: _____
Name:  Edward Leal

By: _____
Name:  Christopher Smart